IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**DEBRA WISE, et al.,**

          Plaintiffs,

v.                            CIVIL ACTION NO.  2:12-cv-01378

**C. R. BARD, INC.,**

          Defendant.

MEMORANDUM OPINION AND ORDER
(Defendant's Motion for Summary Judgment)

Pending before the court is defendant C. R. Bard, Inc.'s Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment ("Motion for Summary Judgment") [Docket 102]. Responses and replies have been filed, and the motion is ripe for review. For the reasons set forth below, the defendant's Motion for Summary Judgment [Docket 102] is **DENIED as moot in part**, **GRANTED in part**, and **DENIED in part**.

    I.    Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 70,000 cases currently pending, approximately 10,000 of which are in the C. R. Bard, Inc. ("Bard") MDL, MDL 2187. In this particular case, the plaintiff, Debra Wise, was surgically implanted with the Avaulta Plus Anterior Support System and the Avaulta Plus Posterior Support System (collectively "Avaulta Plus"), mesh products manufactured by Bard to treat POP. (*See*

Short Form Compl. [Docket 1], at 2).[1] The plaintiff received her surgery in West Virginia. (*Id.* at 4). The plaintiff claims that as a result of implantation of the Avaulta Plus, she has experienced multiple complications, including vaginal spasms, damage to her ureter, vagina, and rectum, kidney reflux, urinary tract infections, chronic constipation, dyspareunia (pain during sexual intercourse), lower pelvic pain, incontinence, and kidney stones. (*See* Pl. Fact Sheet [Docket 102-9], at 7). The plaintiff alleges negligence, strict liability for design defect, strict liability for manufacturing defect, strict liability for failure to warn, breach of express warranty, breach of implied warranty, and punitive damages. (Short Form Compl. [Docket 1], at 4). Additionally, the plaintiff's husband, Ronald Wise, alleges loss of consortium. (*Id.*).

In the instant motion, Bard moves for summary judgment on the plaintiffs' claims under both Ohio and West Virginia Law.[2] However, as explained below, because I **FIND** that the laws of West Virginia govern in this case, I will address only those claims Bard seeks dismissal of under West Virginia law: (1) negligent inspection, packaging, marketing, and selling; (2) manufacturing defect (negligence and strict liability); (3) failure to warn (negligence and strict liability); (4) breach of warranty (express and implied); and (5) punitive damages.[3]

II.     **Legal Standards**

    a.  **Summary Judgment**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.

---

[1] The present case is part of Wave 1 of the Bard MDL, MDL 2187. (Pretrial Order # 118 (Docket Control Order for Selection and Discovery of 200 Cases) [Docket 15]). Because the parties agree that the Southern District of West Virginia is the proper venue, I set this case for trial in the Southern District. (*See* Am. Joint Submission, MDL 2187 [Docket 1004], at 8; *see also* Order [Docket 63]).

[2] Bard contends that Ohio law governs the substance of the plaintiffs' claims. However, Bard also provides arguments under West Virginia law in the event that the court rejects its choice of law determination. (*See* Def.'s Mem. Supp. [Docket 103], at 2, n.2).

[3] The court's disposition on the defendant's Motion for Partial Summary Judgment on Plaintiffs' Punitive Damages Claims [Docket 105] is fully explained in a separate memorandum opinion and order.

R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

### b. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases such as this. The choice of law for these pretrial motions depends on whether they involve federal or state law. "When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had

3

they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). In cases based on diversity jurisdiction, the choice-of-law rules to be used are those of the states where the actions were originally filed. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010). The plaintiff is an Ohio resident who was implanted with the Avaulta Plus in West Virginia and therefore, filed her complaint directly into MDL 2187 in the Southern District of West Virginia. Accordingly, I apply West Virginia choice-of-law rules.

In West Virginia, the applicable substantive law in tort cases is the law of the place of injury. *See McKinney v. Fairchild Intern., Inc.*, 487 S.E.2d 913, 922 (W. Va. 1997) ("Traditionally, West Virginia courts apply the *lex loci delicti* choice-of-law rule; that is, the substantive rights between the parties are determined by the law of the place of injury."). West Virginia courts have deviated from this rule only in occasions of "particularly thorny conflicts problems," including "complex, or unusual, contractual situations . . . and torts which very existence are dependent upon the brea[d]th and legality of contracts." *Ball v. Joy Mfg. Co.*, 755 F. Supp. 1344, 1351 (S.D. W. Va. 1990) (quoting *Oakes v. Oxygen Therapy Servs.*, 363 S.E.2d 130, 131 (W. Va. 1987)).

The plaintiffs assert that West Virginia substantive law should apply to this case because Ms. Wise was implanted with the allegedly defective product in Huntington, West Virginia.

4

(Short Form Compl. [Docket 1], at 4). While Bard acknowledges that Ms. Wise's surgery took place in West Virginia, Bard nevertheless argues that Ohio law should apply to her claims, given that the plaintiffs reside in Ohio and that Ms. Wise received treatment for her alleged injuries in Ohio. Bard's argument is not supported by the West Virginia choice-of-law principle of *lex loci delicti*, which, as stated above, focuses on where the injury occurred, not where the plaintiff resides or was treated. *See, e.g.*, *West Virginia ex rel. Chemtall Inc. v. Madden*, 607 S.E.2d 772, 779–80) (W. Va. 2004) (holding that in a toxic tort case, the court must apply the substantive laws of the state in which the plaintiff's alleged exposure occurred); *see also Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986) ("[T]he place of the wrong for purposes of the *lex loci delicti* rule, however, is defined as the place where the last event necessary to make an act[or] liable for an alleged tort takes place." (internal quotations omitted)). Here, the injury— that is, the last event necessary to make an actor liable for an alleged tort—took place in West Virginia, where Ms. Wise was implanted with the allegedly defective device. The fact that Ms. Wise received treatment for that injury elsewhere does not alter the *lex loci delicti* analysis. Consequently, I **FIND** that West Virginia law applies to this litigation.[4]

### III.  Analysis

#### a.  Negligent Inspection, Packaging, Marketing, and Selling

First, Bard contends that the plaintiffs' claims for negligent inspection, packaging, marketing, and selling of the Avaulta Plus, to the extent they are distinct, all fail for lack of evidence. (Bard's Mem. of Law. in Supp. of Mot. for Summ. J. ("Bard's Mem. Supp.") [Docket 103], at 11). In response, the plaintiffs state that they "do not attempt to allege separate and

---

[4] I also note that this MDL does not present the "thorny conflicts problems" that have sometimes led West Virginia courts to depart from *lex loci delicti*, *Oakes*, 363 S.E.2d at 131, nor does it raise public policy concerns that would call for application of a state other than the state where the injury occurred. *See Paul v. Nat'l Life*, 352 S.E.2d 550, 556 (W. Va. 1986) (stating that West Virginia's choice-of-law principles "do[] not require the application of the substantive law of a foreign state when that law contravenes the public policy of this State").

5

distinct claims, each standing alone, of 'negligent inspection,' 'negligent marketing,' 'negligent labeling,' 'negligent packing' and 'negligent selling.'" (Pls.' Resp. in Opp. to Bard's Mot. for Summ. J. ("Pls.' Opp.") [Docket 180], at 4). Accordingly, Bard's Motion for Summary Judgment with regard to negligent inspection, packing, marketing, and selling of the Avaulta Plus is **DENIED as moot**.

### b. Manufacturing Defect

Next, Bard argues that the plaintiffs' manufacturing defect claims fail for lack of evidence. (Bard's Mem. Supp. [Docket 103], at 2). The plaintiffs do not contest Bard's motion with regard to manufacturing defect. (Pls.' Opp. [Docket 180], at 9-10). Accordingly, Bard's Motion for Summary Judgment on the plaintiffs' manufacturing defect claims is **GRANTED**, and these claims are **DISMISSED**.

### c. Failure to Warn[5]

Next, Bard contends that the plaintiffs' failure to warn claims fail for lack of proximate cause. (Bard's Mem. Supp. [Docket 103], at 2). In particular, Bard states:

> Dr. Nutt was aware of all risks related to the Avaulta Plus system known or reasonably known by July 16, 2007, and there is no additional information learned since about the product, known at the time of implant, that would have changed his treatment and care decisions related to Ms. Wise.

(Bard's Mem. Supp. [Docket 103], at 20).[6]

A defect arising from failure to warn "covers situations when a product may be safe as designed and manufactured," but then "becomes defective because of the failure to warn of

---

[5] In *Tyree, et al. v. Boston Scientific Corp.*, I decided as a matter of first impression, "that the learned intermediary doctrine would apply in West Virginia where a device manufacturer has not participated in [direct to consumer] advertising[.]" No. 2:12-cv-08633, 2014 WL 5431993, at *6 (S.D. W. Va. Oct. 23, 2014). That decision governs in this case.

[6] In its analysis of failure to warn under Ohio law, particularly in reference to *Doane v. Givuadan Flavors Corp.*, 919 N.E.2d 290 (Ohio Ct. App. 2009), Bard introduces the argument that what Bard knew or should have known about their product after a plaintiff's implant date is immaterial. I tend to disagree with Bard's interpretation of *Doane*. Furthermore, because I have determined that the substantive laws of West Virginia govern the plaintiffs' case, Bard's repeated emphasis on risks—or the lack thereof—known at the date of implant holds very little weight.

dangers which may be present when the product is used in a particular manner." *Ilosky v. Michelin Tire Corp.*, 307 S.E.2d 603, 609 (W. Va. 1983). To substantiate a failure to warn claim under strict liability, the plaintiff must show that the failure to adequately warn "made the product not reasonably safe" and "that the defect was the probable cause of her injuries." *Id.* at 610.

I agree with the plaintiffs that many of Bard's references to Dr. Nutt's testimony have been "artfully taken out of context." (Pls.' Opp. [Docket 180], at 17). In addition to explaining the testimony utilized by Bard, the plaintiffs have also pointed to numerous instances where Dr. Nutt stated he would not have used the Avaulta Plus had he been warned of certain risks. (*Id.* at 20). Therefore, the plaintiffs have presented sufficient evidence on the inadequacy of Bard's warnings and on the existence of proximate cause to show there is a genuine dispute of material fact. Accordingly, Bard's Motion for Summary Judgment on the plaintiffs' failure to warn claims is **DENIED**.

### d. Breach of Warranty

Lastly, Bard argues that the plaintiffs cannot sustain their claims for breach of warranty, both express and implied, because the learned intermediary doctrine applies to each of these claims, making them indistinguishable from the plaintiffs' failure to warn claims. (*See* Def.'s Mem. Supp. [Docket 103], at 20-25). The plaintiffs do not contest summary judgment with regard to express warranty. (Pls.' Opp. [Docket 180], at 26). I previously granted similar motions under both Illinois and Arizona law. *See Huskey v. Ethicon, Inc.*, No. 2:12-cv-05201, 2014 WL 3362287, at *6-7 (S.D. W. Va. July 8, 2014) (applying Illinois state law); *see also Bellew v. Ethicon, Inc., et al.*, No. 2:13-cv-2473, 2014 WL 6886129, at *5-6 (S.D. W. Va. Nov. 24, 2014) (applying Arizona state law). As noted above, like *Huskey* and *Bellew*, the learned intermediary

doctrine applies in this products liability action. *See generally Tyree*, 2014 WL 5431993. "The learned intermediary doctrine stands for the proposition that a drug manufacturer is excused from warning each patient who receives the product when the manufacturer properly warns the prescribing physician of the product's dangers." *State ex rel. Johnson & Johnson Corp. v. Karl*, 647 S.E.2d 899, 902-03 (W. Va. 2007) (internal quotation marks omitted). While the parties in this case have not relied on precisely the same arguments, my reasoning and conclusions from *Huskey* still govern.

In *Huskey*, I ruled as follows:

> Ethicon argues that because Illinois's learned intermediary doctrine does not require medical device manufacturers to warn end-users, the doctrine should bar the fraud-based claims premised on representations made to Ms. Huskey. Otherwise, Ethicon contends, plaintiffs could simply plead around the learned intermediary doctrine by characterizing failure-to-warn claims as fraud claims.
>
> Illinois courts have not directly addressed this issue. However, courts around the country have extended the learned intermediary doctrine to all claims based on a manufacturer's failure to warn, including claims for fraud, misrepresentation, and breach of warranty. *See, e.g.*, *Talley v. Danek Med., Inc.*, 179 F.3d 154, 163-64 (4th Cir. 1999) (barring breach of warranty and fraud claims); *Lee v. Mylan, Inc.*, 806 F. Supp. 2d 1320, 1325 (M.D. Ga. 2011) (negligent misrepresentation and breach of warranty claims); *Beale v. Biomet, Inc.*, 492 F. Supp. 2d 1360, 1372 (S.D. Fla. 2007) (negligent misrepresentation); *Southern v. Pfizer, Inc.*, 471 F. Supp. 2d 1207, 1218 (N.D. Ala. 2006) (fraudulent misrepresentation); *In re Norplant Contraceptive Prods. Liab. Litig.*, 955 F. Supp. 700, 709 (E.D. Tex. 1997) (misrepresentation and implied warranty); *Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 169 (Tex. 2012) (fraud by omission).
>
> Here, the plaintiffs' fraud-based claims and warranty claims are simply repackaged failure-to-warn claims.
> . . .
>
> If the learned intermediary doctrine "could be avoided by casting what is essentially a failure to warn claim under a different cause of action . . . then the doctrine would be rendered meaningless." *In re Norplant Contraceptive Products Liab. Litig.*, 955 F. Supp. 700, 709 (E.D. Tex. 1997). Accordingly, I predict with confidence that, if confronted with this issue, the Illinois Supreme Court would hold that the learned intermediary doctrine applies to all claims based on a medical device manufacturer's failure to warn, including fraud, fraudulent

8

concealment, constructive fraud, negligent misrepresentation, and breach of warranty. Therefore, Ethicon's motion for summary judgment on fraud-based claims and warranty claims is **GRANTED**.

*Huskey*, 2014 WL 3362287, at *6-7. Accordingly, Bard's Motion for Summary Judgment with regard to the plaintiffs' breach of warranty claims is **GRANTED**, and these claims are **DISMISSED**.

### IV. Conclusion

For the reasons set forth above, the defendant's Motion for Summary Judgment [Docket 102] is **DENIED as moot in part**, **GRANTED in part**, and **DENIED in part**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

        ENTER:    February 5, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

9