## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

**DEBRA WISE, et al.,**

        **Plaintiffs,**

**v.**                                  **CIVIL ACTION NO.  2:12-cv-01378**

**C. R. BARD, INC.,**

        **Defendant.**

### MEMORANDUM OPINION AND ORDER
### (*Defendant's Motion for Partial Summary Judgment*)

Pending before the court are defendant C. R. Bard, Inc.'s Motion for Partial Summary Judgment on Plaintiffs' Punitive Damages Claims ("Motion for Partial Summary Judgment") [Docket 105] and Motion for Bifurcation of Trial with Separate Punitive Damages Phase ("Motion for Bifurcation") [Docket 174]. For the reasons set forth below, the defendant's Motion for Partial Summary Judgment [Docket 105] is **DENIED**, and the defendant's Motion for Bifurcation [Docket 174] is **GRANTED in part** and **DENIED in part**.

### I.     Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 70,000 cases currently pending, approximately 10,000 of which are in the C. R. Bard, Inc. ("Bard") MDL, MDL 2187. In this particular case, the plaintiff, Debra Wise, was surgically implanted with the Avaulta Plus Anterior Support System and the Avaulta Plus Posterior Support System (collectively "Avaulta Plus"), mesh products manufactured by Bard to treat POP. (*See*

Short Form Compl. [Docket 1], at 2).[1] The plaintiff received her surgery in West Virginia. (*Id.* at 4). The plaintiff claims that as a result of implantation of the Avaulta Plus, she has experienced multiple complications, including vaginal spasms, damage to her ureter, vagina, and rectum, kidney reflux, urinary tract infections, chronic constipation, dyspareunia (pain during sexual intercourse), lower pelvic pain, incontinence, and kidney stones. (*See* Pl. Fact Sheet [Docket 102-9], at 7). The plaintiff alleges negligence, strict liability for design defect, strict liability for manufacturing defect, strict liability for failure to warn, breach of express warranty, breach of implied warranty, and punitive damages. (Short Form Compl. [Docket 1], at 4). Additionally, the plaintiff's husband, Ronald Wise, alleges loss of consortium. (*Id.*).

In the instant motion, "Bard moves for partial summary judgment on the grounds that Plaintiffs have not and cannot produce clear and convincing evidence demonstrating that Bard exhibited the type of extreme, outrageous, and wanton behavior necessary to impose punitive damages[.]" (Def.'s Mot. for Partial Summ. J. [Docket 105], at 1). I proceed to review Bard's three specific arguments regarding (1) the FDA; (2) due care; and (3) the MSDS—all of which have been previously addressed throughout the course of these MDLs.

## II.    Legal Standards

### a.    Partial Summary Judgment

A partial summary judgment "is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case." Fed. R. Civ. P. 56 advisory committee's note. A motion for partial summary judgment is governed by the same standard applied to consideration of a full motion for summary judgment. *See Pettengill v. United States*, 867 F. Supp. 380, 381

---

[1] The present case is part of Wave 1 of the Bard MDL, MDL 2187. (Pretrial Order # 118 (Docket Control Order for Selection and Discovery of 200 Cases [Docket 15]). Because the parties agree that the Southern District of West Virginia is the proper venue, I set this case for trial in the Southern District. (*See* Am. Joint Submission, MDL 2187 [Docket 1004], at 8; *see also* Order [Docket 63]).

(E.D. Va. 1994) (citing *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592. 595 (4th Cir. 1985)). To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor," *Anderson*, 477 U.S. at 256, that is, more than a mere "scintilla of evidence" in support of his or her position, *id.* at 252. Conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

### b. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases such as this. The choice of law for these pretrial motions depends on whether they involve federal or state law. "When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants*

3

*Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). In cases based on diversity jurisdiction, the choice-of-law rules to be used are those of the states where the actions were originally filed. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010). The plaintiff is an Ohio resident who was implanted with the Avaulta Plus in West Virginia and, therefore, filed her complaint directly into MDL 2187 in the Southern District of West Virginia. Accordingly, I apply West Virginia choice-of-law rules.

In West Virginia, the applicable substantive law is the law of the place of injury. *McKinney v. Fairchild Intern., Inc.*, 487 S.E.2d 913, 922 (W. Va. 1997) ("Traditionally, West Virginia courts apply the *lex loci delicti* choice-of-law rule; that is, the substantive rights between the parties are determined by the law of the place of injury."). West Virginia courts have deviated from this rule only in occasions of "particularly thorny conflicts problems," including "complex, or unusual, contractual situations . . . and torts which very existence are dependent upon the brea[d]th and legality of contracts." *Ball v. Joy Mfg. Co.*, 755 F. Supp. 1344, 1351 (S.D. W. Va. 1990) (quoting *Oaks v. Oxygen Therapy Servs.*, 363 S.E.2d 130, 131 (W. Va. 1987)).

The plaintiffs assert that West Virginia substantive law should apply to this case because Ms. Wise was implanted with the allegedly defective product in Huntington, West Virginia. (Short Form Compl. [Docket 1], at 4). While Bard acknowledges that Ms. Wise's surgery took place in West Virginia, Bard nevertheless argues that Ohio law should apply to her claims, given

that the plaintiffs reside in Ohio and that Ms. Wise received treatment for her alleged injuries in Ohio. Bard's argument is not supported by the West Virginia choice-of-law principle of *lex loci delicti*, which, as stated above, focuses on where the injury occurred, not where the plaintiff resides or was treated. *See, e.g.*, *West Virginia ex rel. Chemtall Inc. v. Madden*, 607 S.E.2d 772, 779–80 (W. Va. 2004) (holding that in a toxic tort case, the court must apply the substantive laws of the state in which the plaintiff's alleged exposure occurred); *see also Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986) ("[T]he place of the wrong for purposes of the *lex loci delicti* rule, however, is defined as the place where the last event necessary to make an act[or] liable for an alleged tort takes place." (internal quotations omitted)). Here, the injury—that is, the last event necessary to make an actor liable for an alleged tort—took place in West Virginia, where Ms. Wise was implanted with the allegedly defective device. The fact that Ms. Wise received treatment for that injury elsewhere does not alter the *lex loci delicti* analysis. Consequently, I **FIND** that West Virginia law applies to this litigation.[2]

### III.   Analysis

#### a.   Motion for Partial Summary Judgment

##### i.   Compliance with FDA

First, Bard contends that "compliance with FDA and industry regulations in designing, testing, manufacturing, marketing, labeling, and selling its Avaulta and Align Devices demonstrates that punitive damages are inappropriate in this case." (Def.'s Mem. of Law in Supp. of Mot. for Partial Summ. J. ("Def.'s Mem. Supp.") [Docket 106], at 5).

I have previously denied a motion by Bard for partial summary judgment with regard to

---

[2] I also note that this MDL does not present the "thorny conflicts problems" that have sometimes led West Virginia courts to depart from *lex loci delicti*, *Oakes*, 363 S.E.2d at 131, nor does it raise public policy concerns that would call for application of the law of a state other than the state where the injury occurred. *See Paul v. Nat'l Life*, 352 S.E.2d 550, 556 (W. Va. 1986) (stating that West Virginia's choice-of-law principles "do[] not require the application of the substantive law of a foreign state when that law contravenes the public policy of this State").

punitive damages based on Bard's compliance with the FDA and other industry standards. *See In re C. R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, MDL 2187, 2013 WL 2432871, at *7–8 (S.D. W. Va. June 4, 2013). While the parties in this case have not relied on precisely the same arguments, my reasoning and conclusions from the bellwether trials govern. Furthermore, to the extent that there are differences in fact and exhibits, the court does not find them sufficiently material. In *Bard*, I ruled as follows:

> In sum, even if the court were to accept Bard's arguments as true—that Bard followed the 510(k) process and that the process addresses safety and efficacy—the court must still necessarily inquire whether the plaintiffs have presented other evidence creating a genuine issue of material fact as to whether Bard's actions rose to a level amounting to culpable behavior under each state's punitive damages standard. As discussed, infra, Section D, the plaintiffs here have done so.

*Id.* at 8. Here, the evidence presented is virtually identical to the evidence presented in *Bard*. Therefore, I **ADOPT** my prior ruling with regard to compliance with the FDA and industry standards, as stated in *Bard*, and **FIND** that the plaintiff has presented sufficient evidence to show that there is a genuine dispute of material fact that punitive damages are warranted in this case.

### ii.  Design, Manufacture, Testing, & Marketing

Next, Bard argues "that [it] acted with care in designing, developing, manufacturing, testing, labeling, and marketing its Devices" and that its "[d]evices cannot be considered so obviously defective and the warnings accompanying these Devices so entirely lacking to warrant punitive damages." (Def.'s Mem. Supp. [Docket 106], at 13).

I have previously denied a motion by Bard for partial summary judgment with regard to punitive damages based on design defects and inadequate warnings. *See Bard*, 2013 WL 2432871, at *5-9 (S.D. W. Va. June 4, 2013). While the parties in this case have not relied on precisely the same arguments, my reasoning and conclusions from the bellwether trials still

govern. Furthermore, to the extent that there are differences in fact and exhibits, the court does

not find them sufficiently material. In *Bard*, I ruled as follows with regard to design defects:

> In sum, these cases merely hold that when the *only* evidence before the court is a genuine dispute as to whether a product was defectively designed—and perhaps that the defendant knew about it—then the plaintiff has not shown by clear and convincing evidence the culpable conduct required for an award of punitive damages. The mere fact that there may be a genuine dispute of material fact as to whether the Avaulta products were defectively designed does not compel the conclusion that the plaintiffs are not entitled to punitive damages. Again, the inquiry is whether the plaintiffs have presented evidence sufficient to create a genuine issue of material fact as to whether Bard's actions rose to a level that warrant an imposition of punitive damages under each state's standard. And again, as discussed *infra*, Section D, the plaintiffs here have done so.

*Id.* at 9.

> Additionally, in *Bard*, I ruled as follows with regard to inadequate warnings:

> In the instant matters, the fact that Bard provided warnings regarding certain issues is simply not dispositive. The court must still necessarily inquire whether the plaintiffs have presented other evidence creating a genuine issue of material fact as to whether Bard's actions rose to a level amounting to culpable behavior. As discussed *infra*, Section D, unlike the cases cited by Bard, the plaintiffs here have done so.

*Id.* at 7. Here, the evidence presented is virtually identical to the evidence presented in *Bard*.

Therefore, I **ADOPT** my prior ruling with regard to design defects and inadequate warnings, as

stated in *Bard*, and **FIND** that the plaintiff has presented sufficient evidence to show that there is

a genuine dispute of material fact that punitive damages are warranted in this case.

### iii.   Material Safety Data Sheet ("MSDS")

Lastly, Bard contends that the MSDS "cannot serve as a basis for punitive damages"

because (1) the MSDS is irrelevant and (2) Bard's use of the Marlex resin warned of in the

MSDS was appropriate. (Def.'s Mem. Supp. [Docket 106], at 21).

I have repeatedly held throughout the course of these MDLs that the MSDS is relevant to

the plaintiffs' substantive and punitive damages claims. *E.g.*, *Hendricks v. Boston Scientific*

*Corp.*, No. 2: 12-cv-08633, 2014 WL 5033263, at *4–5 (S.D. W. Va. Oct. 9, 2014) (denying the

defendant's motion for partial summary judgment on the plaintiffs' punitive damages claims);

*Sanchez v. Boston Scientific Corp.*, No. 2:12-cv-05762, 2014 WL 4059214, at *13 (S.D. W. Va.

Aug. 18, 2014) (same). Most recently, in *Cisson v. C. R. Bard, Inc.*, I denied Bard's motion for a

new trial and held as follows:

> [E]vidence has probative value if it "has any tendency to make a fact more or less
> probable than it would be without the evidence." Fed. R. Evid. 401(a). Here, the
> MSDS, which cautions against using the polypropylene resin in a permanent
> medical implant, bolstered many of the plaintiffs' claims, making them more
> probable than not. For instance, the MSDS demonstrated that Bard had
> knowledge about certain risks of the Avaulta Plus that it did not communicate to
> implanting physicians, therefore providing support for the plaintiffs' failure to
> warn claim. (*See, e.g.*, Trial Tr. July 30, 2013 [Docket 365], at 110:8–9
> (introducing testimony of Ms. Cisson's implanting physician, Dr. Raybon, who
> was "astounded" when he saw the MSDS)). Bard's disregard of the risks
> presented in the MSDS also provided evidence of willful misconduct and
> wantonness that furthered an award of punitive damages. (*See* Trial Tr. Aug. 7,
> 2013 [Docket 377], at 60:24–61:2 (introducing testimony that Mr. Darois, the
> Vice President of Research and Development at Bard, did not perform further
> studies after becoming aware of the MSDS in 2007)); *see also Sanchez I*, 2014
> WL 4059214, at *13 ("A reasonable jury could find that by ignoring a warning on
> the MSDS and failing to conduct clinical testing, BSC's actions were despicable
> conduct with willful and conscious disregard of the safety of consumers."").
> Therefore, the MSDS tended to make more probable than not the plaintiffs'
> claims for failure to warn and punitive damages[.]

No. 2:11-cv-00195, slip op. at 12 (S.D. W. Va. Jan. 26, 2015). Here, the evidence

presented is virtually identical to the evidence presented in *Cisson*. Therefore, I **ADOPT**

my prior ruling with regard to the MSDS and use of polypropylene resin, as stated in

*Cisson*, and **FIND** that the plaintiff has presented sufficient evidence to show that there is

a genuine dispute of material fact that punitive damages are warranted in this case.

### b.  Motion for Bifurcation

Bard requests bifurcation of the trial under Federal Rule of Civil Procedure 42(b). The

plaintiffs do not oppose bifurcation as long as the first phase is on liability and compensatory

8

damages and the second phase is limited only to the amount of punitive damages. (*See* Pls.'
Resp. to Bard's Motion for Bifurcation [Docket 193], at 1). I agree. Bard's motion to bifurcate
the trial is **GRANTED** insofar as it seeks bifurcation with the first phase on liability and
compensatory damages and the second phase, if necessary, on amount of punitive damages. To
the extent that Bard seeks to trifurcate the trial or to preclude evidence regarding its liability for
punitive damages in the first phase of the bifurcated trial, the motion is **DENIED**.

Additionally, the plaintiffs argue Bard's financial status is relevant not only to the amount
of potential punitive damages but also to liability for compensatory and punitive damages. First,
they assert such evidence "is relevant to [Bard's] claim relating to the lack of premarket human
trials," specifically because "the decision to launch the Avaulta Plus without premarket human
trials was motivated, in part, by financial considerations." (*Id.* at 2). Second, the plaintiffs claim
evidence of financial status is relevant to Bard's "motive" and thus its liability for punitive
damages. (*See id.* at 5). I **FIND** the probative value of allowing evidence of financial status
during the first phase of the trial is substantially outweighed by the danger of confusing the
issues or misleading the jury. Fed. R. Evid. 403. Such evidence is more appropriately considered
during the second phase of the trial, which, if necessary, would focus on the amount of punitive
damages. Accordingly, I **DENY** the plaintiffs' request to introduce evidence of Bard's financial
status during the first phase of the trial.

## IV.    Conclusion

For the reasons set forth above, the defendant's Motion for Partial Summary Judgment
[Docket 105] is **DENIED** and the defendant's Motion for Bifurcation [Docket 174] is
**GRANTED in part** and **DENIED in part**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        February 6, 2015

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE